UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSANA GUERRERO,<br><br>   Plaintiff,<br><br>   v.<br><br>CITIBANK, N.A., et al.,<br><br>   Defendants. | Case No. 25-cv-01426-JSC<br><br>**ORDER RE: MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 41 |

Susana Guerrero sues Citibank, N.A., Calvary Portfolio Services, LLC, Experian Information Solutions, Inc., Trans Union LLC, and Equifax Information Services, LLC, alleging they "failed to properly investigate Plaintiff's disputes[] and reported inaccurate credit information damaging Plaintiff's creditworthiness." (Dkt. No. 1 ¶ 11.)[1] Now pending before the Court is Citibank's motion to compel arbitration. Having carefully considered the parties' filings, and with the benefit of oral argument on August 28, 2025, the Court GRANTS in part and DENIES in part Citibank's motion. Plaintiff entered a valid arbitration agreement when she applied for a Macy's credit card account issued by Citibank, so she must arbitrate claims related to that Macy's account. However, the Macy's agreement does not govern claims related to a separate Wayfair account, which Plaintiff alleges was opened by an unknown individual without her consent. So, the Court denies Citibank's motion to compel arbitration as to Plaintiff's Wayfair-related claims.

## BACKGROUND

### I.   COMPLAINT ALLEGATIONS

"Sometime in 2020, Plaintiff opened a Macys credit card account, issued by Defendant

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1  Citibank with an account number ending in 8935 (the 'Macys Account')." (*Id.* ¶ 51.) "In May of
2  2021, Plaintiff's purse was stolen by an unknown individual." (*Id.* ¶ 40.) That individual "began
3  using Plaintiff's credit cards, including the card associated with the Macys Account." (*Id.* ¶ 52.)
4  "Plaintiff promptly notified Defendant Citibank of the theft and asked for the Macys Account to
5  be closed." (*Id.* ¶ 53.) However, "Citibank failed to close the Macys Account." (*Id.* ¶ 54.) The
6  unknown individual thus continued to "use[] the credit card associated with the Macys Account."
7  (*Id.* ¶ 55.) Plaintiff "once again notified Defendant Citibank to close the account," "filed multiple
8  police reports and provided this information to Defendant Citibank," and "properly disputed
9  Defendant Citibank's reporting of the Macys Account." (*Id.* ¶¶ 56, 57, 59.) However, Citibank
10 "continue[s] to report inaccurate information on Plaintiff's credit reports . . . [and] continues to
11 attempt to collect on the Macys Account." (*Id.* ¶ 61.)

   Following the theft of Plaintiff's purse, an unknown individual also opened "other
13 accounts in Plaintiff's name without Plaintiff's consent or knowledge." (*Id.* ¶ 52.) First,
14 "[s]ometime in 2022," an unknown individual "opened a Wayfair credit card account, issued by
15 Defendant Citibank with an account number starting with 60353 (the 'Wayfair Account') using
16 Plaintiff's personal identifying information without Plaintiff's knowledge or consent." (*Id.* ¶ 62.)
17 Plaintiff informed "Citibank that the Wayfair Account was a fraudulent and unauthorized account
18 and was a result of identity theft," but "Citibank failed to close the Wayfair Account [and]
19 continued to attempt to collect the debt associated with the Wayfair Account." (*Id.*) Second,
20 sometime prior to 2023, "an unknown individual opened a Costco credit card account, issued by
21 Defendant Citibank with an account number ending in 6084 (the 'Costco Account') using
22 Plaintiff's personal identifying information without Plaintiff's knowledge or consent." (*Id.* ¶ 67.)
23 "Despite Plaintiff informing Defendant Citibank that the Costco Account was a fraudulent and
24 unauthorized account and was a result of identity theft, Defendant Citibank failed to close the
25 Costco Account [and] continued to attempt to collect the debt associated with the Costco
26 Account." (*Id.* ¶ 68.)

27 **II.    PROCEDURAL BACKGROUND**
28 On February 11, 2025, Plaintiff sued Citibank, in addition to other defendants. (Dkt. No.

1.) Plaintiff alleges Citibank violated the Fair Credit Reporting Act, the Rosenthal Fair Debt Collection Practices Act, the California Identity Theft Act, and the California Consumer Credit Reporting Agencies Act. (*Id.*)

Citibank filed the pending motion to compel arbitration and stay all pending proceedings.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. Under the FAA, "arbitration agreements [are] on an equal footing with other contracts," and therefore courts must "enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted). In resolving a motion to compel arbitration under the FAA, a court's inquiry is limited to two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quotation marks omitted). "If both conditions are met, the FAA requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* (cleaned up).

## DISCUSSION

The Court begins by considering whether the agreement Plaintiff signed when she applied for a Macy's credit card is a valid agreement to arbitrate. Then, the Court considers whether that agreement applies to Plaintiff's claims related to the Wayfair account opened by an unknown individual using Plaintiff's personal identifying information without her consent.[2]

### I. MACY'S CLAIMS

#### A. Agreement to Arbitrate

It is undisputed the agreement provided to Plaintiff when she opened a Macy's credit card account is a valid agreement to arbitrate. Citibank's Senior Vice President and Product Manager attests "Plaintiff was issued a Macy's credit card account . . . on or about December 18, 2020."

---

[2] Plaintiff asserts her "claims relating to the Costco Account are not asserted against Defendant Citibank and are not at issue in this matter. . . . Rather, those claims were brought solely against Defendant Cavalry, and do not involve Citibank in any capacity." (Dkt. No. 56 at 10 n.1.) The Court thus does not consider Plaintiff's claims relating to the Costco Account.

3

(Dkt. No. 41-1 at 3; Dkt. No. 1 ¶ 51 (alleging "[s]ometime in 2020, Plaintiff opened a Macys credit card account.")).) The Agreement provided to Plaintiff when she applied for the Macy's Account contains an arbitration provision, (Dkt. No. 41-1 at 2-3), which provides as follows:

> *PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.*
>
> **THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.**
>
> **Covered claims**
>
> • *You or we may arbitrate* any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").
>
> • **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**
>
> Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

(*Id.* at 25-26.) The agreement permits individuals to reject the arbitration provision "by sending a written rejection notice . . . within 45 days of account opening." (*Id.* at 27.) "Plaintiff did not opt out." (*Id.* at 3.) So, it is undisputed a valid agreement to arbitrate exists.

### B. Encompasses the Dispute

Turning to the second gateway question, it is also undisputed the Macy's Agreement

encompasses Plaintiff's claims regarding her Macy's Account. The Agreement provides "[y]ou or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship." (Dkt. No. 41-1 at 25-26.) Plaintiff alleges Citibank "failed to close the Macys Account," "continued to attempt to collect the debt associated with the Macys Account," and "continued to report inaccurate information on Plaintiff's credit reports regarding the Macys Account." (Dkt. No. 1 ¶¶ 54, 58, 59.) Because these claims are related to Plaintiff's Macy's Account, the Macy's Agreement encompasses this dispute.

### C. Unconscionability

Plaintiff argues she cannot be bound by the Macy's Agreement because it is an unconscionable contract of adhesion. Under the FAA, an arbitration agreement is invalid when it is unenforceable under "generally applicable contract defenses" recognized by state law, such as "unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (cleaned up). Although the Macy's Agreement is governed by South Dakota law, (Dkt. No. 41-1 at 19), Plaintiff cites California cases to argue unconscionability. Even were the Court to apply California law, Plaintiff's unconscionability arguments are unavailing.

Under California law, a plaintiff seeking to invalidate a contractual provision as unconscionable must prove both procedural and substantive unconscionability. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (citing *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 114 (2000)). Procedural unconscionability "focus[es] on oppression or surprise due to unequal bargaining power" whereas substantive unconscionability focuses "on overly harsh or one-sided results." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013).

As to procedural unconscionability, Plaintiff argues the agreement is "clearly a contract of adhesion given that the only option is to accept or reject it in its entirety." (Dkt. No. 56 at 25.) But "an arbitration agreement is not adhesive if there is an opportunity to opt out of it." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016). In *Mohamad*, the Ninth Circuit concluded an agreement in which drivers could opt out within 30 days of receipt was "not adhesive, which support[ed] [the court's] holding that the delegation provision [was] not

5

1 unconscionable." *Id.* Here, it is undisputed an individual can reject the arbitration provision in the
2 Macy's Agreement "by sending a written rejection notice to" a specified address "within 45 days
3 of account opening." (Dkt. No. 41-1 at 27.) Citibank's 45-day opt-out period "is more forgiving
4 than the one in *Circuit City Stores, Inc. v. Ahmed,* where [the Ninth Circuit] found thirty days a
5 sufficient period in which to consider whether to opt out of arbitration." *See Kilgore v. KeyBank,*
6 *Nat. Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (quoting *Cir. City Stores, Inc. v. Ahmed*, 283 F.3d
7 1198, 1199 (9th Cir. 2002)). So, the Macy's Agreement arbitration provision is not adhesive.

8       Plaintiff's other arguments as to procedural unconscionability are unavailing. Plaintiff
9 argues "the disparity in bargaining power is further exacerbated by the fact that Defendant is a
10 sophisticated commercial banking corporation and those individuals who . . . apply for credit card
11 accounts with Defendant are consumers in an inferior bargaining position." (Dkt. No. 56 at 25.)
12 But Plaintiff provides no legal authority supporting her argument that this dynamic alone—
13 common across consumer contracts—renders the Macy's Agreement procedurally
14 unconscionable. Plaintiff also argues the agreement is procedurally unconscionable because "[b]y
15 forcing the Macy Account Cardholder Agreement apply to the later Wayfair Account claims,
16 Defendant is imposing terms Plaintiff would have never been on notice of and imposed terms on
17 Plaintiff without an opportunity to negotiate the terms overall." (Dkt. No. 56 at 26.) As discussed
18 below, the Court does not interpret the Macy's Agreement to apply to Plaintiff's Wayfair-related
19 claims. As to the Macy's-related claims, while there was no opportunity for Plaintiff to negotiate
20 the arbitration provision's terms, this is not a situation involving "an absence of meaningful
21 choice." *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1095 (2021) ("Oppression arises
22 from an inequality of bargaining power which results in no real negotiation and an absence of
23 meaningful choice.") (cleaned up). Plaintiff had a choice to opt out of the arbitration provision
24 and its terms altogether. (Dkt. No. 41-1 at 27.)

25       So, Plaintiff has not met her burden of demonstrating the Macy's Agreement is
26 procedurally unconscionable. *See Tompkins*, 840 F.3d at 1023 ("The party asserting that a
27 contractual provision is unconscionable bears the burden of proof."). "[B]ecause both procedural
28 and substantive unconscionability must be present in order for an agreement to be unenforceable,"

the Court "need not reach the question whether the agreements here were substantively unconscionable." *See Mohamed*, 848 F.3d at 1211.

\*\*\*

In sum, Plaintiff must arbitrate her claims related to the Macy's Account. A valid agreement exists that encompasses the dispute, and Plaintiff does not establish that agreement is unconscionable.

## II. WAYFAIR ACCOUNT

It is undisputed Plaintiff "did not open the Wayfair Account," did not "authorize anyone else to do so," and "never used the Wayfair Account." (Dkt. No. 56-1 ¶ 4.) Instead, as alleged in the complaint, "[s]ometime in 2022, an unknown individual opened a Wayfair credit card account, issued by Defendant Citibank . . . using Plaintiff's personal identifying information without Plaintiff's knowledge or consent." (Dkt. No. 1 ¶ 62.) Plaintiff thus argues her "claims against Defendant Citibank based off the Wayfair Account[] are not governed by the Macy's Account Cardholder Agreement, including the arbitration agreement within." (Dkt. No. 56 at 10.) Citibank responds that all of Plaintiff's claims against Citibank in this case are subject to arbitration pursuant to the Macy's Agreement, which covers "any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship." (Dkt. No. 41-1 at 17.) Citibank insists Plaintiff's claims, including those based on the Wayfair account, "all relate to Plaintiff and Citibank's relationship." (Dkt. No. 58 at 8.)

The parties thus dispute the scope of the Macy's Agreement arbitration provision. Because the Arbitration Agreement contains a South Dakota choice-of-law provision, (Dkt. No. 41-1 at 19), the Court applies South Dakota law to this dispute. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (noting "federal courts sitting in diversity look to the law of the forum state . . . when making choice of law determinations" and "[u]nder California law, the parties' choice of law will govern unless section 187(2) of the Restatement (Second) of Conflict of Laws dictates a different result"). Plaintiff argues the Court should "apply the local law of the state with the most significant relationship to the transaction and the parties," *The Aspect Grp. v. Movietickets.com, Inc.*, No. CV 05-3125 SFEX, 2006 WL 5894608, at \*6 (C.D. Cal. Jan. 24,

7

1  2006), which Plaintiff asserts is California in this case. (Dkt. No. 56 at 15-16.) But in *The Aspect
2  Group*, the court could not assume the parties selected a Florida choice-of-law provision because
3  "the very question before the Court [was] whether a contract existed at all." 2006 WL 5894608 at
4  *6. Here, in contrast, it is undisputed the Macy's Agreement is a valid contract between Citibank
5  and Plaintiff. *See supra.* The Court thus applies South Dakota law to decide whether that
6  Agreement governs Plaintiff's claims based on the Wayfair Account.

7  Under South Dakota law, "[i]n determining the proper interpretation of a contract the court
8  must seek to ascertain and give effect to the intention of the parties." *Coffey v. Coffey*, 888
9  N.W.2d 805, 808–09 (2016) (cleaned up). To do so, courts "examine the contract as a whole and
10 give words their plain and ordinary meaning." *Id.* The Macy's Agreement, in relevant part,
11 provides:

> **Covered claims**
>
> • *You or we may arbitrate* any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").
>
> • **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

17 (Dkt. No. 41-1 at 17.) So, claims are subject to arbitration if they arise out of or relate to (1)
18 Plaintiff's account, (2) a previous related account, or (3) Plaintiff's relationship with Citibank.
19 None of those conditions apply here.

20  First, "your account" refers to Plaintiff's Macy's Account. Plaintiff's claims regarding
21 Citibank's "fail[ure] to close the *Wayfair* Account" do not arise out of or relate to her *Macy's*
22 Account. (Dkt. No. 1 ¶ 63 (emphasis added).)

23  Second, the Wayfair Account was opened after the Macy's Account. (Dkt. No. 1 ¶¶ 51, 62
24 (alleging Plaintiff opened the Macy's Account "[s]ometime in 2020" and "an unknown
25 individual" opened the Wayfair account "[s]ometime in 2022").) So, Plaintiff's Wayfair claims do
26 not arise out of or relate to a *previous* account, let alone a previous *related* account.

27  Third, as Plaintiff alleges an *unknown* individual opened the Wayfair Account in her name
28 and without her consent, Plaintiff's Wayfair-related claims do not arise from or relate to *her*

8

relationship with Citibank.  "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *See Concepcion*, 563 U.S. at 351.  It would be unreasonable to conclude that when Plaintiff entered the Macy's Agreement, she (or Citibank) expected their "relationship" to include a separate account fraudulently created in Plaintiff's name.  Plaintiff submitted a declaration to this effect.  (Dkt. No. 56-1 ¶ 6 ("I never intended to be bound by the Macys Account Cardholder Agreement regarding accounts I never opened.").)

Moreover, "[c]ourts have concluded that well-supported allegations of fraud in the formation of an arbitration agreement, such as where the party objecting to arbitration alleges an identity thief opened or otherwise interfered with the agreement containing the arbitration provision, preclude a finding as a matter of law that the parties have an enforceable agreement to arbitrate." *Haynes v. TransUnion, LLC*, No. 19-CV-7157(JS)(ARL), 2021 WL 7906567, at *5 (E.D.N.Y. Sept. 30, 2021), *adhered to on reconsideration,* No. 19-CV-7157(JS)(ARL), 2022 WL 1228927 (E.D.N.Y. Apr. 25, 2022) (collecting cases).  Indeed, courts have applied this principle in cases involving Citibank.  *See, e.g.*, *Bennett v. Citibank, N.A.*, No. CV 19-19859, 2020 WL 7183504, at *1 (D.N.J. Aug. 27, 2020) (denying without prejudice Citibank's motion to compel arbitration when "Plaintiff argue[d] she never entered into the Card Agreement and that an unknown individual opened the Account as a result of identity theft"); *Wisdom v. Experian Info. Sols., Inc.*, No. 4:23-CV-93-ALM-KPJ, 2023 WL 9058868, at *6 (E.D. Tex. Nov. 30, 2023), *report and recommendation adopted,* No. 4:23CV93, 2024 WL 23136 (E.D. Tex. Jan. 2, 2024) (ordering a summary trial on arbitration because "[i]f the facts in Plaintiff's declaration are true, there cannot be a written agreement to arbitrate between these parties because a third party opened the Home Depot Account [issued by Citibank]—not Plaintiff").  It would undermine the logic of these identify theft decisions to allow Citibank to nevertheless compel arbitration in this case merely because Plaintiff happened to have a different and unrelated credit card issued by Citibank.

In fact, courts have reached this precise conclusion in cases involving Citibank and the identical arbitration clause.  In *Van Dijen v. Equifax Info. Servs. LLC*, No. 3:23-CV-05908-TMC, 2024 WL 2133952, at *5 (W.D. Wash. May 13, 2024), the plaintiff opened a credit card associated with Citibank in 2015, closed the account in 2020, and in 2022 "discovered that there was a

9

balance on a Citibank card associated with an account and account number he did not recognize." *Id.* \*1. The district court denied Citibank's motion to compel arbitration of the plaintiff's claims. The court noted when a contract uses broad "arising out of" or "relating to" phrases, the court "generally consider[s] whether the dispute in question 'was an immediate, foreseeable result of the performance of contractual duties.'" *Id.* \*4 (quoting *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1213 (11th Cir. 2021)). In *Van Dijen*, "it was not an immediate, foreseeable result of [the plaintiff's] use of his original credit card or his relationship with Citibank that third parties unknown to him would reopen a closed account and initiate an account with a new account number using his personal information." *Id.* \*5 (citation omitted). The court also concluded the plaintiff's claims did not "arise from" or "relate to" the parties' relationship because the plaintiff "would presumably bring the same claims against Citibank if he never had an account there to begin with but identity thieves had used his information to open one in his name." *Id.* \*6. The court continued: "because [the plaintiff's] claims concern[ed] Citibank's conduct as to the allegedly fraudulent new account created without [the plaintiff's] knowledge, those claims [did] not necessarily require any substantive discussion of [the plaintiff's] prior account or relationship with Citibank." *Id.*

Similarly, in *Holloway v. Citibank, N.A.*, No. 2:23-CV-00404-JDW, 2024 WL 1806427, at \*1 (E.D. Pa. Apr. 25, 2024), the plaintiff opened two credit card accounts with Citibank in 2014. "[I]n 2021 he learned that in October 2017, someone fraudulently opened a Citibank personal loan . . . and a Citibank Diamond Card in his name." *Id.* The court denied Citibank's motion to compel arbitration, noting the phrases "arising out of" and "relating to" "are broad but not unbounded." *Id.* \*3. The court explained "[t]here is no connection of any sort between [the plaintiff's] claims in this case and his relationship with Citibank. In fact, it's the opposite; [the plaintiff] alleges that he did **not** have a relationship with Citibank." *Id.* Because the plaintiff's claim was "not about information that Citibank reported in connection with an account that [the plaintiff] had with Citibank, . . . it ha[d] nothing to do with the relationship between them." *Id.*

*Van Dijen* and *Holloway* are persuasive. Here, as in *Van Dijen*, "it was not an immediate, foreseeable result of [Plaintiff's] use of [her] [Macy's] credit card or [her] relationship with

10

1 Citibank that third parties unknown to [her] would . . . initiate an account with a new account
2 number using [her] personal information." *See* 2024 WL 2133952, at *5. And, as in *Holloway*,
3 "[Plaintiff] could bring an identical claim even if [she] had never had a relationship with
4 Citibank." 2024 WL 1806427, at *3. Just as the *Van Dijen* and *Holloway* courts denied
5 Citibank's motions to compel arbitration, the Court does so here: because Plaintiff's Wayfair-
6 related claims do not have any connection to the relationship she initiated with Citibank when she
7 opened the Macy's Account, the Wayfair-related claims are outside the scope of the Macy's
8 Agreement's arbitration provision.

9       This conclusion is in accordance with principles of contract interpretation. Courts should
10 not "interpret language in a manner that renders a portion of the contract meaningless." *Coffey*,
11 888 N.W.2d at 809. If "our relationship" were construed to mean the parties' relationship as it
12 pertains to *subsequent* accounts, it would naturally follow that "our relationship" includes the
13 parties' relationship as it pertains to *present* and *previous* accounts, too. But the Macy's
14 Agreement's arbitration provision separately lists these accounts. (Dkt. No. 41-1 at 17 (permitting
15 either party to arbitrate "any claim, dispute or controversy between you and us arising out of or
16 related to your account, a previous related account or our relationship.").) To construe "our
17 relationship" to include claims all involving past, present, and future accounts would render
18 superfluous the separate "your account" and "a previous related account" conditions in the
19 arbitration provision.

20       Indeed, were the Court to accept Citibank's argument that "our relationship" includes
21 Plaintiff's Wayfair-related claims, then "our relationship" is essentially limitless. If in 20 years
22 Plaintiff opens a Citibank account and is injured using a Citibank ATM, Citibank could seek to
23 arbitrate that claim based on its present interpretation of "arising out of or related to . . . our
24 relationship." At oral argument, Citibank responded the Macy's Agreement would not require
25 Plaintiff to arbitrate this hypothetical ATM claim because "our relationship" in the Agreement
26 means "our relationship with regard to credit." But Citibank could cite no language in the Macy's
27 Agreement supporting its addition of the "with regard to credit" language, nor could Citibank cite
28 any authority supporting its argument the parties (or other Citibank customers) reasonably

11

expected "our relationship" to mean "our relationship with regard to credit in general."

Citibank also relies on a "heightened presumption of arbitrability" in support of its motion. (Dkt. No. 58 at 7.) But that presumption applies "only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010); *see also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044–45 (9th Cir. 2009) ("The presumption in favor of arbitration . . . does not apply if contractual language is plain that arbitration of a particular controversy is not within the scope of the arbitration provision.") (cleaned up). Here, the presumption favoring arbitration does not apply because there is no ambiguity. Whatever "our relationship" means in the Macy's Agreement, it does not include claims arising from a subsequent account when there is undisputed evidence Plaintiff herself did not open that account. As a matter of law, Plaintiff's Wayfair-related claims do not "arise out of" or "relate to" her relationship with Citibank. So, the Court DENIES Citibank's motion to compel arbitration of Plaintiff's Wayfair-related claims.

## CONCLUSION

For the reasons stated above, the Court GRANTS in part and DENIES in part Citibank's motion to compel arbitration. The Court GRANTS Citibank's motion to compel as to Plaintiff's Macy's-related claims. The Court DENIES Citibank's motion to compel as to Plaintiff's Wayfair-related claims.

This Order disposes of Docket No. 58.

**IT IS SO ORDERED.**

Dated: August 28, 2025

JACQUELINE SCOTT CORLEY
United States District Judge